OPINION
{¶ 1} Appellants, Alice A. Burya ("Alice") and Richard Burya ("Richard"), appeal from a judgment entry of the Lake County Court of Common Pleas, granting summary judgment in favor of appellees, Lake Metroparks Board of Park Commissioners ("Lake Metroparks") and Richard Schultz ("Schultz"). We affirm in part, reverse in part, and remand this matter for further proceedings.
 {¶ 2} The record discloses the following facts. On October 13, 2001, Alice and her immediate family attended the "haunted hayride" at the Lake Metroparks' Farm Park in Kirtland, Ohio. The "haunted hayride" was an event conducted by Lake Metroparks and took place on Lake Metroparks' property; it consisted of a tractor towing a wagon of seated attendees through the woods.
 {¶ 3} Alice and her family were seated in the front row of the wagon. At some point during the ride, the wagon in which Alice and her family were riding detached from the tractor, rolled backwards, and impacted a tree.
 {¶ 4} On October 8, 2003, appellants filed a complaint with the Lake County Court of Common Pleas. The complaint specifically named Lake Metroparks as a defendant. In addition, the complaint named unknown Lake Metroparks' employees — John Doe I and John Doe II — as defendants. Alice claimed that as a result of the "haunted hayride" accident, she incurred physical injuries and requested compensatory damages in excess of $25,000. Richard, as Alice's husband, requested damages for loss of consortium.
 {¶ 5} Lake Metroparks filed a timely answer and stated the affirmative defense of immunity. Shortly thereafter, Lake Metroparks moved for summary judgment as to all of the complaint's claims. Lake Metroparks' argued that it was entitled to summary judgment predicated upon immunity under R.C. 2744, et seq.
 {¶ 6} Attached to the motion for summary judgment were Alice's deposition testimony and the affidavit of Schultz. Schultz's affidavit attested that he was employed by Lake Metroparks at the time of the accident. He stated that the tractors and wagons used during the "haunted hayride" were owned by Lake Metroparks and it was his job to inspect, maintain, and repair the tractors and wagons. Schultz further attested that the wagon involved in the accident was inspected in September 2001, just prior to the "haunted hayride." This inspection failed to reveal any defects or breakage and, therefore, he concluded the wagon was safe for use during the "haunted hayride."
 {¶ 7} Schultz further stated that he inspected the wagon following the accident. He attested that "a weld at a place where the tongue of the wagon was attached to the front axle gave way and allowed the tongue of the wagon to come apart and break free from the wagon, while the other end of the tongue remained attached to the tractor which was towing the wagon."
 {¶ 8} Alice's testimony revealed specific facts surrounding the accident. She testified that the accident and her alleged injury occurred during the hayride, while the wagon and tractor were in the woods. Photographic exhibits corroborated her testimony.
 {¶ 9} On July 6, 2004, appellants moved for leave of court to file an amended complaint, which the trial court ultimately granted. The amended complaint named Schultz as a defendant in place of John Doe I. This amended complaint, and its attendant summons, were served by certified mail upon Mr. Schultz. Thereafter, an amended answer was filed jointly by Lake Metroparks and Schultz. The amended answer included the affirmative defense of insufficiency of process and insufficiency of service of process.
 {¶ 10} Appellants filed a brief in opposition to Lake Metroparks' motion for summary judgment. The brief in opposition maintained that Lake Metroparks was not entitled to immunity under R.C. 2744, et seq. Lake Metroparks replied contending that immunity did apply and that the accident did not occur "within or on the grounds of buildings that are used in connection with the performance of a governmental function."
 {¶ 11} Schultz filed separate motions for summary judgment. His first motion for summary judgment argued that, as an employee of Lake Metroparks, he was entitled to immunity pursuant to R.C.2744.03(A)(6)(a) — (c). Schultz's second motion for summary judgment maintained that, as a former John Doe defendant, Civ.R. 15(D) required that he be served personally with process, which appellants failed to do. Thus, he argued that appellants' claims against him were barred by the statute of limitations.
 {¶ 12} After reviewing the parties' submissions, the trial court granted summary judgment in favor of Lake Metroparks and Schultz. From this judgment, appellants filed a timely notice of appeal and now set forth the following assignment of error:
 {¶ 13} "The trial court erred in granting summary judgment to appellees in its December 21, 2004 order since there are genuine issues of material fact as to whether appellees breached the duty of care to appellants, a business invitee."
 {¶ 14} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C);Leibreich v. A.J Refrigeration, Inc., 67 Ohio St.3d 266, 268,1993-Ohio-12.
 {¶ 15} Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turnerv. Turner, 67 Ohio St.3d 337, 340, 1993-Ohio-176, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
 {¶ 16} The party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. at 293.
 {¶ 17} If the moving party fails to satisfy this initial burden, summary judgment should be denied. Dresher at 293. However, if this initial burden is met, the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Id.
 {¶ 18} The instant appeal requires an analysis relating to a political subdivision's immunity from tort liability. The Ohio Supreme Court has set forth the following three-tiered analysis to determine whether a political subdivision is immune from tort liability: the first tier is to establish immunity under R.C.2744.02(A)(1); the second tier is to analyze whether any of the exceptions to immunity under R.C. 2744.02(B) apply; if so, then, under the third tier, the political subdivision has the burden of showing that one of the defenses of R.C. 2744.03 applies, thereby reinstating immunity. Cater v. Cleveland, 83 Ohio St.3d 24, 28,1998-Ohio-421.
 {¶ 19} R.C. 2744.02(A)(1) states that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Under the first tier of our analysis, we must determine whether the "haunted hayride" was a "governmental function." If the "haunted hayride" is a "governmental function," then Lake Metroparks is entitled to immunity unless our analysis of the second tier establishes an exception to that immunity.
 {¶ 20} Appellants concede that the "haunted hayride" represented a "governmental function" because the ride was part of a political subdivision's operation of a park. As a result, appellants admit that Lake Metroparks is generally immune from liability per R.C. 2744.02(A)(1). However, appellants contend that R.C. 2744.02(B)(4) provides an exception to the foregoing immunity and, therefore, summary judgment was inappropriate.
 {¶ 21} At the outset, we agree with appellants that the "haunted hayride" was a "governmental function." R.C.2744.01(C)(2)(u)(i) states that a "governmental function" includes the following:
 {¶ 22} "[A political subdivision's] design, construction, reconstruction, renovation, repair, maintenance, and operation of any school athletic facility, school auditorium, or gymnasium or any recreational area or facility, including, but not limited to, any of the following:
 {¶ 23} "(i) A park, playground, or playfield[.]"
 {¶ 24} Here, Lake Metroparks, a political subdivision, conducted the "haunted hayride" as part of its operation of a park; namely, the Lake Metroparks' Farm Park. Accordingly, the "haunted hayride" was a "governmental function." See, e.g.,Doyle v. Akron (1995), 104 Ohio App.3d 479, 481.
 {¶ 25} Although immunity generally applies to a "governmental function," we must examine former R.C. 2744.02(B)(4)[1]
which provides an exception to this immunity, to wit:
 {¶ 26} "Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on thegrounds of buildings that are used in connection with theperformance of a governmental function[.]" (Emphasis added.)
 {¶ 27} A "plain meaning construction" of former R.C.2744.02(B)(4) establishes that it is only to be applied when the alleged injury occurs in or on the grounds of a building where the governmental function, from which the harm proximately resulted, is performed. Kennerly v. Montgomery Cty. Bd. ofCommrs., 158 Ohio App.3d 271, 2004-Ohio-4258, at ¶ 19, citingHubbard v. Canton City School Bd. of Edn., 97 Ohio St.3d 451,2002-Ohio-6718. In Winfield Constr., Inc. v. Oakton, Inc., 11th Dist. No. 2004-L0-51, 2005-Ohio-3085, this court held that because the plaintiff's injury did not occur in a political subdivision's building or on the grounds of a political subdivision's building, former R.C. 2744.02(B)(4) was not applicable.
 {¶ 28} In the instant case, Alice testified that the accident occurred in the woods. This was further confirmed by numerous picture exhibits showing that the accident and injury occurred in the woods. However, this evidence, standing alone, fails to affirmatively demonstrate that the injury did not occur on the grounds of a building owned by Lake Metroparks. Thus, there remained a genuine issue of material fact regarding whether R.C.2744.02(B)(4) was applicable.
 {¶ 29} Appellee contends that immunity is reinstated under R.C. 2744.03(A)(5), as its employee, Schultz, exercised his judgment or discretion regarding whether the tractor and wagon could be used for the "haunted hayride" and whether they were safe for use during the "haunted hayride." Our analysis of the third tier establishes that immunity is not reinstated per R.C.2744.03(A)(5).
 {¶ 30} R.C. 27433.03(A)(5) states that, "[t]he political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."
 {¶ 31} In the recent and analogous case of Elston v. HowlandLocal Schools, 11th Dist. No. 2004-T-0092, 2005-Ohio-4765, this court held that R.C. 2744.03(A)(5) is inapplicable. In Elston,
the plaintiff was injured as a result of his baseball coach's alleged failure to properly use a batting cage safety device or the coach's failure to properly instruct the plaintiff on the proper method to use the safety device. Accordingly, the plaintiff filed a negligence claim against the school district and baseball coach. The defendant school district claimed that the coach, as an employee, exercised judgment or discretion in his use of the safety device and, therefore, R.C. 2744.03(A)(5) applied. We concluded as follows:
 {¶ 32} "[The school's district] reliance upon R.C.2744.03(A)(5), and the trial court's determination that R.C.2744.03(A)(5) is applicable here, is both misplaced and incorrect. A plain reading of R.C. 2744.03(A)(5) establishesthat immunity is extended only to the acts of a politicalsubdivision, not to the acts of its employees. * * * Therefore, the immunity conferred by R.C. 2744.03(A)(5) only relieves liability for claims based upon the exercise of judgment or discretion of the political subdivision itself. As such, because R.C. 2744.03(A)(5) does not contain any language pertaining to the actions of a political subdivision's employees, it does not apply to [the plaintiff's] vicarious liability claims. Thus, [the school district] would be vicariously liable for [the plaintiff's] injuries based on R.C. 2744.02(B)."Elston, at ¶ 32.
 {¶ 33} Here, as in Elston, Lake Metroparks argues that immunity is reinstated under R.C. 2744.03(A)(5). Lake Metroparks contends it presented evidence showing that Schultz, as an employee, exercised his judgment relating to whether the wagon and tractor could be used safely during the "haunted hayride." As stated in Elston, the immunity of R.C. 2744.03(A)(5) does not apply to a political subdivision's employee's exercise of judgment or discretion. Rather, R.C. 2744.03(A)(5) only applies when the political subdivision itself exercises judgment or discretion.
 {¶ 34} There is no evidence that Lake Metroparks exercised any judgment or discretion with respect to whether the wagon or tractor was to be used for the "haunted hayride" or whether the wagon or tractor was safe to be used for the "haunted hayride." As a result, Lake Metroparks failed to show that immunity is reinstated under R.C. 2744.03(A)(5). Thus, pursuant to R.C.2744.02(B), immunity does not exist, and the trial court's grant of summary judgment as to Lake Metroparks was error. Thus, this portion of appellant's sole assignment of error is well-taken.
 {¶ 35} Appellants also argue that Mr. Schultz's Civ.R. 15(D) defense should fail. While admitting, essentially, that the rule requires personal service of process upon a John Doe defendant (in which guise Mr. Schultz first entered this action), they contend an exception should apply in this case, in order to facilitate the purposes of Civ.R. 15(C), which is intended to ameliorate the effect of the statute of limitations. Williams v.Jerry L. Kaltenbach Ent., Inc. (1981), 2 Ohio App. 3d 113, at the syllabus.
 {¶ 36} Civ.R. 15(D) states as follows:
 {¶ 37} "Amendments where name of party unknown. — When the plaintiff does not know the name of a defendant, that defendant may be designated in a pleading or proceeding by any name and description. When the name is discovered, the pleading or proceeding must be amended accordingly. The plaintiff, in such case, must aver in the complaint the fact that he could not discover the name. The summons must contain the words "name unknown," and a copy thereof must be served personally upon the defendant."
 {¶ 38} It should be noted that, by its terms, Civ.R. 15(D) mandates personal service of the original complaint and summons
on a John Doe defendant — not the amended complaint and summons. McConville v. Jackson Comfort Sys., Inc. (1994),95 Ohio App.3d 297, 304. If the drafters of the rule had intended that the amended complaint and summons be served personally upon a (by then former) John Doe defendant, they would have used the phrases "amended complaint" and "summons to the amended complaint" in the last two sentences of the rule. In this case, therefore, the service of the amended complaint and summons on Mr. Schulz, via certified mail, was itself sufficient.
 {¶ 39} Supreme Court authority indicates, however, that service of the original complaint and summons should be made on the former John Doe defendant, and that Civ.R. 15(D) explicitly requires these to be by personal service. Cf. Amerine v.Haughton Elevator Co. (1989), 42 Ohio St.3d 57, 58. This requirement can be waived, since pursuant to Civ.R. 12(G) and (H)(1), the affirmative defenses of lack of personal jurisdiction and insufficiency of process or service of process must be presented either by a Civ.R. 12(B) motion, or by way of answer, or they are waived. Thus, a John Doe defendant could waive the personal service requirements of Civ.R. 15(D) if, when served with the complaint and summons, he answered without raising these defenses as provided by Civ.R. 12; or, if he was not served when still designated as a "John Doe" with the original complaint and summons, he answered the amended complaint and summons without properly raising these defenses.
 {¶ 40} In this case, however, Mr. Schulz did not waive insufficiency of process or service thereof: he claimed these defenses in the first pleading he could file in this action — his answer to the amended complaint. As such, the matter was preserved, and it was proper for the trial court to grant him summary judgment on the basis of the statute of limitations, once the one year period provided for service under Civ.R. 3(A) ran in October, 2004.
 {¶ 41} Based upon the foregoing analysis, appellants' sole assignment of error is without merit regarding their claim that the trial court erred by granting summary judgment in favor of Schultz. However, the portion of appellant's assignment of error relating to Lake Metroparks is with merit. Thus, the trial court erred in granting summary judgment to Lake Metroparks.
 {¶ 42} This court notes with appreciation the superior presentation of the issues made by the attorneys for both sides to this appeal.
 {¶ 43} The judgment of the Lake County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
Ford, P.J., concurs with Concurring Opinion,
Rice, J., dissents with Dissenting Opinion.
[1] Former R.C. 2744.02 is applicable to the case at bar, as it was in effect at the time of the accident.